IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTH CAROLINA;<br><br>    *Plaintiff*,<br><br>  v.<br><br>BRYAN STIRLING, in his official capacity as Executive Director of the South Carolina Department of Corrections;<br><br>    *Defendant*. | Case No.:  3:24-cv-906-JDA<br><br>**Complaint for Declaratory and Injunctive Relief** |

## INTRODUCTION

1. The South Carolina Department of Corrections ("SCDC") enforces the nation's most restrictive policy on media access to prisoners. Unique among prison systems nationwide, SCDC takes the categorical position that "[i]nmates lose the privilege of speaking to the news media when they enter SCDC."

2. SCDC's policy (the "Challenged Policy") bans interviews by anyone, on any topic, and by any real-time means: in person, by video, or by phone. And although correspondence by mail is allowed, publication of a prisoner's written speech is similarly prohibited. As a result of the Challenged Policy, people in SCDC custody are deliberately and comprehensively shut out of the public discourse.

3. The Challenged Policy infringes on Plaintiff American Civil Liberties Union Foundation of South Carolina's (ACLU-SC) First Amendment right to receive and publish the speech of incarcerated people. At present, Plaintiff has two clients who are incarcerated in SCDC and who seek to publish speech on several matters of deep public concern: prison administration, prison healthcare, gender equity, and the propriety of capital punishment. Plaintiff's ability to

1

interview those individuals and publish its clients' speech is impeded by the Challenged Policy, which threatens punishment of both Plaintiff and its clients.

4.    By threatening to punish prisoners for corresponding with the media or other individuals for the purpose of publication, and threatening to punish non-incarcerated persons who publish the speech of incarcerated people, the Challenged Policy chills the First Amendment rights of all incarcerated people and impedes Plaintiff's right to receive and publish information under the First Amendment. By suppressing the speech of incarcerated people and Plaintiff's access to that speech, the Challenged Policy intentionally stifles the public's access to information on matters of deep political concern.

5.    Because the Challenged Policy is overbroad, is designed to suppress core First Amendment activities, and is not justified by or tailored to achieve a legitimate penological interest, Plaintiff asks that it be declared unconstitutional and be permanently enjoined.

## PARTIES

6.    **Plaintiff American Civil Liberties Union Foundation of South Carolina** ("ACLU-SC") is a nonprofit organization incorporated in South Carolina. The mission of ACLU-SC is to protect and advance civil rights and civil liberties in South Carolina through litigation, education, and advocacy. As a component of its work, ACLU-SC engages in multimedia storytelling to communicate with the public and lawmakers about its clients, issues, and activities. Prison conditions, gender justice, and death penalty abolition are all core issue areas for ACLU-SC.

7.    **Defendant Bryan Stirling** is the Agency Director of the South Carolina Department of Corrections. In that capacity, Defendant Stirling is the final policymaker for SCDC and exercises final and ultimate authority over the construction and enforcement of all SCDC policies, including but not limited to GA-02.01 and the Challenged Policy. He is sued in his official capacity.

## JURISDICTION AND VENUE

8. This action is brought under 42 U.S.C. § 1983 to redress violations of the First and Fourteenth Amendments to the United States Constitution. This Court has jurisdiction under 28 U.S.C. § 1331.

9. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims brought by Plaintiff have occurred in the District of South Carolina and the Defendant is located in the District.

10. Venue is proper in the Columbia division under Local Civil Rule 3.01 because that is where Defendant Stirling resides and where a substantial portion of the events or omissions giving rise to the claims occurred.

## FACTUAL ALLEGATIONS

### The Challenged Policy

11. SCDC, under the direction of Defendant Stirling, prohibits individuals incarcerated in SCDC facilities from communicating with the media or other individuals who intend to publish, or cause to be published, the speech of incarcerated people.

12. Prisoner contact with members of the press is governed by SCDC Policy GA-02.01, "Employee and Inmate Relations with News Media, Legislators, and Others."

13. Under GA-02.01.8, "personal contact interviews with any SCDC inmate, untried county safekeeper, or death row inmate *by anyone* will be prohibited," (emphasis added).

14. Though the text of the policy only prohibits "personal contact interviews," SCDC has a pattern and practice of prohibiting incarcerated people from communicating with anyone who intends to publish prisoner speech, either in person, by video, or by telephone. And although prisoners are permitted to write letters to the press, SCDC does not allow incarcerated people to publish their own writings in media outlets.

15.     According to Defendant Stirling, the purpose of the Challenged Policy is to ensure a victim of a crime is not exposed to the speech or expression of the crime's perpetrator.

16.     In an interview with The Post and Courier, Defendant Stirling explained that the Challenged Policy is "rooted in victims' rights," and that "we don't think victims should have to see the person who harmed them or their family members on the evening news."[1]

17.     In a press release issued by SCDC on August 30, 2023, the department left no doubt about the absolute and categorical nature of the Challenged Policy: "*Inmates lose the privilege of speaking to the news media when they enter SCDC*." Exhibit A.

### Enforcement of the Challenged Policy

18.     A recent incident involving Richard Murdaugh typifies SCDC's enforcement of the Challenged Policy.

19.     On August 8, 2023, SCDC learned that one of its prisoners—Richard Murdaugh—had provided personal information to his attorney, Jim Griffin, during a legal call. During the call, Mr. Murdaugh described his time in custody at SCDC and read a portion of his journal to Mr. Griffin. The phone call was recorded by Mr. Griffin and was later provided to Fox Nation for inclusion in a docu-series, "The Fall of the House of Murdaugh." None of the information contained in the call implicated prison security.

20.     Despite authorizing the call, SCDC concluded that Mr. Murdaugh and Mr. Griffin's conduct violated the Challenged Policy. In a press release, SCDC stated that Mr. Griffin's disclosure of his attorney call with Mr. Murdaugh "violate[d] SCDC's inmate interview policy," and resulted in an immediate revocation of Mr. Murdaugh's tablet and phone privileges.

---

[1] Ema Schumer, *Alex Murdaugh brought new attention to old policy barring SC inmates from talking to media*, The Post and Courier (Sept. 16, 2023) (available at: https://www.postandcourier.com/news/alex-murdaugh-brought-new-attention-to-old-policy-barring-sc-inmates-from-talking-to-media/article_f00e71d2-5270-11ee-b5f1-cbc792c93411.html).

21.     In addition to punishing Mr. Murdaugh, SCDC also sent a letter to attorney Jim Griffin advising him that his actions were prohibited by SCDC policy and "could jeopardize [Griffin's] telephonic communications with [Murdaugh] in the future."

### SCDC's Willful Disclosure of Prisoner Speech for Publication

22.     Despite defending the Challenged Policy as necessary to protect "victims' rights," SCDC sometimes willfully discloses the speech of incarcerated individuals to the media.

23.     For example, SCDC has provided FITSNews with three separate batches of messages sent to Mr. Murdaugh's SCDC-issued tablet, as well as multiple audio files. The audio files include a telephone call between Mr. Murdaugh and his son, Buster Murdaugh, that was recorded by SCDC.

24.     Following SCDC's disclosure of Mr. Murdaugh's speech, FITSNews published an article about the recorded materials *and* published the materials themselves. As a result of SCDC's disclosure, Mr. Murdaugh's recorded phone call has been posted to YouTube and has received over 42,000 views.[2]

### Plaintiff ACLU of South Carolina's Planned Activities ("Planned Activities")

25.     Plaintiff ACLU-SC hired Paul Bowers to be the organization's communications director.

26.     Prior to coming to ACLU-SC, Mr. Bowers worked at both the Charleston City Paper and The Post and Courier. Mr. Bowers was twice named "Journalist of the Year" by the South Carolina Press Association and his freelance work has appeared in The Guardian, New York Times, Washington Post, New Republic, Jacobin, Huffington Post, and Al Jazeera America.

27.     As a member of ACLU-SC staff, Bowers is responsible for the organization's multimedia advocacy and storytelling. He writes press releases, blogs, and news articles;

---

[2] *See* Alex and Buster Murdaugh's Jail Phone Call – 5/16/23, FITSNEWS (available at: https://www.youtube.com/watch?v=7rwiM7rsnlc).

conducts and publishes interviews; and has started recording a podcast to better platform the stories and viewpoints of impacted individuals throughout South Carolina. One of the chief purposes of Bowers's work is to connect the public with ACLU-SC's issues and with the people who are most directly impacted by those issues in South Carolina.

28. When Bowers interviews individuals that ACLU-SC represents in an attorney-client capacity, he does not give legal advice, and ACLU-SC does not claim attorney-client privilege or other protections that attach to attorney-client communications.

29. As part of his work, Bowers works directly with individuals who are incarcerated. For example, in October of 2023 Bowers interviewed Brittany Martin—a Black woman wrongfully convicted and sentenced to four years in prison for her participation in a nonviolent Black Lives Matter protest in Sumter—and published a blog post about her case.[3] That blog is full of direct quotes from Ms. Martin and has been viewed over 2,200 times on ACLU-SC's website.

30. Despite being sentenced in South Carolina, Ms. Martin is being held in an Illinois prison facility. If Ms. Martin was held in SCDC, she would have been subject to discipline under the Challenged Policy because of the direct publication of her words. If Ms. Martin had been threatened with discipline, ACLU-SC would not have published the blog.

31. ACLU-SC currently represents two individuals in SCDC custody who want to tell their stories publicly.

### Sofia Cano

32. Sofia Cano is a transgender woman incarcerated in SCDC. She was incarcerated at age 13, and at age 16 began to experience deep incongruence with her assigned gender. When she was 18, Cano began discussing her gender identity issues and resulting distress with mental health professionals at SCDC. Eventually, Cano was diagnosed with gender dysphoria.

---

[3] Paul Bowers, *An Update on Brittany Martin, A Black Activist Behind Bars*, ACLU of South Carolina (Oct. 17, 2023) (available at: https://www.aclusc.org/en/news/update-brittany-martin-black-activist-behind-bars).

33. Because of her gender dysphoria, Cano has experienced suicidal ideation and has even attempted auto-castration. Prevailing medical standards provide that Cano should receive hormone therapy, but SCDC refuses to provide that treatment. As a result of her untreated gender dysphoria, Cano has continued to endure serious distress.

34. Plaintiff ACLU-SC represents Ms. Cano in a lawsuit challenging SCDC's denial of care under the Eighth Amendment and under Title II of the Americans with Disabilities Act (ADA). *See Cano v. Stirling, et al.*, No. 9:22-cv-4247-JDA-MHC.

35. Plaintiff has access to Ms. Cano by telephone and through in-person visitation.

36. ACLU-SC is heavily involved in debates at the Statehouse over the legality and advisability of state-imposed restrictions on transgender healthcare.

37. ACLU-SC has a First Amendment right to share the speech of its client, Sofia Cano, with the public.

38. To make an informed decision about the propriety of transgender healthcare bans, the public has a right to hear about the devastating physical and emotional costs of denying medical care to individuals with gender dysphoria.

39. Although ACLU-SC can tell parts of Ms. Cano's story itself, SCDC has no legitimate penological interest in preventing ACLU-SC from publishing an article, letter, or podcast that shares the impact of SCDC's inhumane denial of treatment in Ms. Cano's own words.

### Marion Bowman Jr.

40. Marion Bowman Jr. is man held on South Carolina's death row. Mr. Bowman has exhausted his appeals and postconviction claims and is now preparing to petition for executive clemency.

41. Under the South Carolina Constitution, the Governor has authority to commute a sentence of death to a sentence of life imprisonment. The decision to grant or deny clemency is

entirely discretionary and is subject only to "political correctives, not judicial intervention." *Cavazos v. Smith*, 565 U.S. 1, 9 (2011).

42. ACLU-SC advocates for death penalty abolition and improving prison conditions. As part of that advocacy, ACLU-SC is working with Mr. Bowman to help him publicize his case, his petition for clemency, and his experience of life on death row in South Carolina.

43. The goal of publishing Mr. Bowman's story is to increase political pressure in favor of clemency, to shed light on the impropriety of capital punishment, and to inform the public about the inhumane treatment endured by people incarcerated in SCDC.

44. Plaintiff has access to Mr. Bowman by telephone, video calls, and through in-person visitation. Plaintiff has the technical capacity to record its phone and video calls with Mr. Bowman for the purpose of publication.

45. A story *about* Marion Bowman—that is, a telling of his case and his life behind bars—is not functionally equivalent to a story *by* Marion Bowman. A blog post by Paul Bowers about how great a loss it would be if South Carolina kills Marion Bowman is no substitute for the public hearing Marion's own voice, his own laugh, his own anguish.

46. ACLU-SC seeks to record its phone calls with Marion Bowman for the purposes of publishing the interviews in podcast-form.

47. In the context of prison advocacy, empathy is hard earned. The sound of another person's voice can break the demonizing and otherizing constructs that the public has about "prisoners," and can reveal the multidimensional humanity of those behind bars.

48. SCDC has no legitimate penological interest in prohibiting ACLU-SC from publishing blogs, articles, letters, or a podcast that contains speech by Marion Bowman.

## CAUSES OF ACTION

### *First Cause of Action*
### 42 U.S.C. § 1983
### The Challenged Policy Facially Violates the First Amendment

49. Plaintiff repeats and realleges the allegations in previous paragraphs of this Complaint as if fully alleged herein.

50. As director of SCDC, Defendant Stirling is responsible for overseeing and enforcing a policy and practice of punishing and threatening to punish incarcerated persons who speak or write for publication, and third parties who facilitate publication an incarcerated person's speech.

51. SCDC's stated policy is that "inmates lose the privilege of speaking to the news media when they enter SCDC."

52. SCDC does not have a substantial governmental interest, or even a legitimate penological interest, in categorically suppressing all prisoner speech in the media.

53. The categorical prohibition on prisoner speech in the media is not reasonably related to a legitimate penological interest such as ensuring security, maintaining order, or furthering rehabilitation.

54. SCDC's claimed interest—that is, protecting victims from hearing interviews with incarcerated people—is purely about the suppression of speech.

55. Even if SCDC can articulate a reasonable basis for limiting *some* interviews and restricting the publication of *some* speech by incarcerated people, the Challenged Policy lacks any tailoring and is overbroad—that is, it suppresses a substantial amount of protected speech.

56. The Challenged Policy violates Plaintiff ACLU of South Carolina's First Amendment right to publish the speech of others, including incarcerated individuals.

57. Punishing, and threatening to punish, the publication of speech by prisoners chills the protected speech of incarcerated people, erodes the public's access to information on matters

of public importance, and violates Plaintiff ACLU of South Carolina's First Amendment right to receive and publish speech by incarcerated people.

58. Because SCDC's policy is a content- and speaker-based restriction on speech that lacks a legitimate penological justification, it is facially unconstitutional. SCDC may not prohibit the publication of speech merely because the speaker is incarcerated in a SCDC facility.

59. On this first cause of action, Plaintiff asks the Court to permanently enjoin the Challenged Policy and declare that it facially violates the First Amendment of the United States Constitution.

60. Plaintiff also seeks all reasonable costs, expenses, and attorneys' fees available under 42 U.S.C. § 1988 or other applicable law.

## *Second Cause of Action*
## 42 U.S.C. § 1983
**The Challenged Policy Violates the First Amendment as Applied to Plaintiff ACLU-SC**

61. Plaintiffs repeats and realleges the allegations in previous paragraphs of this Complaint as if fully alleged herein.

62. Plaintiff has a First Amendment right to publish the speech of individuals who share their stories with ACLU-SC, including individuals incarcerated in SCDC.

63. SCDC does not have a substantial government interest, or even a legitimate penological interest, in restricting Plaintiff's access to its clients or its publication of the speech of Sofia Cano and Marion Bowman.

64. On this second cause of action, Plaintiff asks the Court to declare that application of the Challenged Policy to Plaintiff's Planned Activities would violate the First Amendment and to permanently enjoin the Challenged Policy as applied to Plaintiff ACLU-SC's Planned Activities.

65. Plaintiff also seeks all reasonable costs, expenses, and attorneys' fees available under 42 U.S.C. § 1988 or other applicable law.

## REQUEST FOR RELIEF

Plaintiff respectfully requests an order and judgment:

    **i.**      Declaring that Defendant's policy and practice of prohibiting the publication of speech by incarcerated individuals—*i.e.*, the Challenged Policy—facially violates the First Amendment to the United States Constitution;

    **ii.**      Preliminarily and permanently enjoining enforcement of the Challenged Policy;

    **iii.**      Preliminarily and permanently enjoining Defendant from enforcing the Challenged Policy against Plaintiff, or its clients or agents, for engaging in the Planned Activities;

    **iv.**      Awarding Plaintiff reasonable costs and attorneys' fees pursuant to 42 U.S.C. § 1988 and other applicable laws; and

    **v.**      Granting Plaintiff such other relief as the Court deems just and proper.

Dated: February 22, 2024

Respectfully submitted,

**ACLU OF SOUTH CAROLINA**

*/s/ Allen Chaney*
Allen Chaney
Fed. Id. No. 13181
P.O. Box 1668
Columbia, SC 29202
T: (864) 372-6881
E: achaney@aclusc.org

**AMERICAN CIVIL LIBERTIES UNION FOUNDATION**

Emerson Sykes*
Speech, Privacy, and Technology Project
125 Broad Street, Floor 18
New York, NY 10004

11

T: (212) 549-2500
E: esykes@aclu.org

David C. Fathi**
National Prison Project
915 15th Street NW, 7th Floor
Washington, DC 20005
Tel: (202) 548-6603
dfathi@aclu.org

Corene T. Kendrick*
National Prison Project
425 California St., Ste 700
San Francisco, CA 94104
Tel: (202) 393-4930
ckendrick@aclu.org

* Application for admission *pro hac vice* forthcoming

** Motion for admission *pro hac vice* forthcoming; not admitted in DC, practice limited to federal courts.

*Attorneys for Plaintiff*

12