https://www.postandcourier.com/news/alex-murdaugh-brought-new-attention-to-old-policy-barring-sc-inmates-from-talking-to-media/article_f00e71d2-5270-11ee-b5f1-cbc792c93411.html

SUBSCRIBER EXCLUSIVE

# Alex Murdaugh brought new attention to old policy barring SC inmates from talking to media

BY EMA ROSE SCHUMER ESCHUMER@POSTANDCOURIER.COM
SEP 16, 2023



The South Carolina Department of Corrections' policy prohibiting inmates from speaking with the media highlights a conflict of interests between victims, who might be harmed hearing from the person who victimized them in the news, and incarcerated people, who are hidden from the public's eye. File/Andrew Whitaker/Staff
BY ANDREW WHITAKER AWHITAKER@POSTANDCOURIER.COM

When former attorney and **convicted murderer Alex Murdaugh** was punished last month for flouting the South Carolina prison policy prohibiting inmates from speaking to the media, many viewed it as the latest example of the Lowcountry scion thinking the rules don't apply to him.

The 55-year-old, who is serving two life sentences in the custody of the S.C. Department of Corrections for the murders of his wife, Maggie, and son Paul, lost privileges after participating in a recorded interview for television — a move that violates a prison policy designed to spare crime victims from having to hear from those who wronged them.



**MURDAUGH NEWS**
Alex Murdaugh convicted of granting unauthorized interview, violating prison policies
BY GLENN SMITH GSMITH@POSTANDCOURIER.COM

Exhibit C -- (p. 1)

The incident, which generated **news stories** amid a **hurricane**, brought fresh attention to an old rule inside South Carolina's prison system that regulates inmates' ability to communicate with the public. The policy highlights a conflict of interests between victims of crime and incarcerated people, who are physically hidden from the public's view but have increasingly taken to media outlets to shed light on their confinement.

Critics contend the policy is legally murky and out of touch with beliefs about the systemic causes of criminal behavior and the prevalence of wrongful convictions. Supporters point out that journalists do not have a legal right to interview individual inmates and that the policy protects victims from enduring further trauma.

Bryan Stirling, the director of South Carolina's prison system, specified that the policy prohibits inmates from speaking to journalists in person, on the phone or through video. They also are not allowed to publish their own writings in media outlets.

"It's rooted in victims' rights," Stirling said. "We don't think victims should have to see the person who harmed them or their family members on the evening news."

The policy allows inmates to exchange written letters with journalists.

The state Department of Corrections does not keep statistics on inmate literacy rates, but Stirling said the average person who enters South Carolina's prison system has a 10th grade education level. Individuals can participate in education programming during their incarceration and can also request stamps and writing materials for free if they are indigent.

## Free speech in prison

Individuals don't give up all of their constitutional rights when they are sentenced to prison. But courts give prisons discretion to enforce policies that impinge on inmates' asserted constitutional rights if the justification for the policy serves a legitimate interest of the correctional facility.

The U.S. Supreme Court, in the landmark decision Turner v. Safley in 1987, articulated a four-point test for determining whether a prison regulation was reasonable: whether a valid connection exists between the regulation and a "legitimate and neutral government interest" cited as justification for the policy; if alternative means of exercising the right exist; what impact the asserted constitutional right would have on the correctional facility; and whether there is an absence of alternatives to the regulation.

First Amendment lawyers disagree on whether the South Carolina prison policy is constitutionally protected.

South Carolina Press Association attorney Jay Bender noted that it is well-established that the law does not afford journalists the right to interview inmates. Reporters, he said, can still cover correctional institutions by writing to inmates, communicating with attorneys and submitting public records requests, for example. Bender said **prisons** throughout the country restrict inmates from participating in interviews with journalists for security reasons.

But Allen Chaney, the legal director of South Carolina's American Civil Liberties Union, said S.C. Department of Corrections' stated reason for regulating inmate speech is not a legitimate need for a prison system and therefore fails the Supreme Court's Turner test.

Exhibit C -- (p. 2)

"Suppressing the prisoners' access to the media for the purpose of protecting victims from hearing or reading the content of that speech is not a legitimate penological interest," he said. "The First Amendment protects speech that society finds offensive or disagreeable, and a policy that suppresses speech merely because of an expansive and unjustified concern that certain individuals might be upset if they receive that speech is anathema to the First Amendment."

**NEWS**

**Should public have access to jailed people's phone calls?**

BY EMA ROSE SCHUMER ESCHUMER@POSTANDCOURIER.COM

Chaney noted plenty of reasons an incarcerated person might want to speak to the press, including to convey their innocence, to share information about the conditions of their confinement or to speak on another matter of public concern.

Stirling said corresponding with journalists via letter is a way that inmates can exercise their constitutional rights and limit the harm they cause victims.

"They shouldn't have to see or listen to someone who victimized them," he said of victims. "It's pretty simple in my mind."

After The Post and Courier provided the state Department of Corrections with a detailed list of criticisms in advance of publication, spokeswoman Chrysti Shain cited security as an additional reason for the policy.

State Attorney General Alan Wilson said he strongly supports the policy, calling it legal and fair.

## Ascent of prison literature

A man serving a sentence for murder in California finds comfort listening to **Taylor Swift** in his prison cell. A woman convicted of second-degree murder in Virginia watches her **children grow up** while she is behind bars. A Missouri man serving a life sentence for murder tries to fight **the effects of solitary confinement.** These are stories that may not have been seen or heard if they fell under South Carolina's longstanding prison policy.

Stirling contends people who are incarcerated "should focus on rehabilitation." Some 85 percent of inmates in custody here will be released in less than five years, he said, and 90 percent will get out in less than 10 years. "We want them to be better when they get out than when they came in."

But incarcerated individuals have a unique perspective to share, according to Baz Dreisinger, a professor at the John Jay College of Criminal Justice in New York. She said currently and formerly incarcerated people have produced journalism and first-person narratives in the past five years on a "scale we've probably never seen before."

People serving time, she said, are on the frontlines of a growing criminal justice reform movement, which gained momentum following the death of George Floyd at the hands of Minneapolis police and ensuing racial justice protests. Dreisinger, who also leads a prison reform nonprofit called Incarceration Nations Network, said the movement seeks to expose "structural and systemic conditions," including racism and poverty, that contribute to arrests.

"It's a lot harder for the general public to dismiss everyone in prison as just a criminal," she said. "There are so many people speaking about their experience inside as multi-dimensional human beings."

Exhibit C -- (p. 3)

But victims of crimes and their loved ones may be less receptive toward their perpetrators' experiences.

Laura Hudson, executive director of the South Carolina Crime Victims' Council, called it offensive and unfair to victims that people serving prison sentences appear in the media.

"Inmates should not become famous because of what they've done to other people," she said.

"If someone is in the prison system for harming you or your loved one, if someone is a rapist, if they're a sex offender, if they're a murderer, if they have stolen substantial amounts of material or money from you … you don't want to see them. You don't want them to have any recognition, even if they say, 'Well, I'm sorry'," Hudson explained. "Crime victims are — I know — they're highly offended from hearing from those individuals."

She said inmates can rely on alternative avenues to remedy their grievances that do not require appearing in the news.

Shain, the spokeswoman for the prison, said inmates can report issues or requests for changes internally. Their family members can also contact the prison's Ombudsman's office and medical team.

### Freedom of information

Murdaugh lost his tablet and phone privileges this summer after attorney **Jim Griffin** provided Fox Nation a video recording of Murdaugh reading excerpts from his diary. The defendant then racked up another infraction after he used another inmate's PIN access to make a phone call.

Griffin maintains he did nothing wrong by providing the media with a recording of his imprisoned client. The prison sent the attorney a letter telling him that his actions, whether intended or not, helped Murdaugh break the prison's rules and that he could face consequences if he did it again.

Griffin said he will comply with the department's directives. But the attorney remains skeptical of the policy and its stated justification.

The policy, Griffin argued, "falls flat on its face" when prison officials provide recorded phone conversations of inmates to the media in response to public records requests. In his client's case, the department handed over Murdaugh's recorded phone conversations with his eldest son, Buster, in May after he was convicted of murder and transferred to the custody of the state prison. National media outlets published the recorded conversation.

"They're releasing every telephone communication of inmates pursuant to the Freedom of Information Act, yet they deny the inmate the right to speak to the media," Griffin noted.

Stirling said the Department of Corrections complies with South Carolina's Freedom of Information Act.

"That is a legislative area," he said. "If they want to change that, they can."

Reach Ema Schumer at eschumer@postandcourier.com. Follow her on Twitter @emaschumer.

MORE INFORMATION

Idalia was a blue moon hurricane with a record high tide that ransacked coastal SC

Exhibit C -- (p. 4)

EMA SCHUMER

Exhibit C -- (p. 5)