IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| American Civil Liberties Union Foundation of South Carolina, | ) ) ) | Civil Action No. 3:24-cv-906-JDA |
| Plaintiff, | ) ) ) | RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR EXPEDITED CONSIDERATION |
| vs. | ) ) ) | |
| Bryan Stirling, in his official capacity as Executive Director of the South Carolina Department of Corrections, | ) ) ) ) ) | |
| Defendant. | ) ) | |

On August 13, 2024, Plaintiff American Civil Liberties Union Foundation of South Carolina ("Plaintiff" or "ACLU") requested that this Court expedite its review of the pending motions in this matter. As accurately noted by the Plaintiff in a footnote to its motion, Plaintiff "conferred [with counsel for] Defendant Stirling [who] takes no position on this request." *Id.* at p. 1 n. 1. The Defendant trusts in the Court's good judgment to decide if and/or when to hold a hearing in this case.

In a significant departure from their consultation, however, the ACLU has also asked "the Court to issue a narrower order that Plaintiff can record an interview with [death row inmate] Marion Bowman and may publish speech obtained in that interview." *Id.* at p. 2. It is this request for alternative interim relief that the Defendant feels compelled to address in this response.

The briefing submitted in this case to date demonstrates that: (1) Plaintiff lacks standing to pursue its claims; (2) well established Supreme Court precedent is dispositive of the Constitutional issues at hand; and (3) Plaintiff has not made the requisite showing for injunctive relief of any kind. Plaintiff suggests, however, that inmate Bowman, *who is not a party to this*

*case*, has experienced a personal change in circumstances that justifies individual special treatment separate and apart from the merits of the ACLU's own claims. This is yet another conflation on the part of the Plaintiff of its purported rights with those of non-party inmates. As more fully discussed in the Defendant's prior submissions, Plaintiff's attempts to confuse the issues by repeated reference to the interests of strangers to this litigation cannot be countenanced.

I. **STANDING**

The ACLU claims a "keen interest" in promoting clemency for Mr. Bowman, but this claimed interest does not equate to "a personal stake in the outcome" of Mr. Bowman's anticipated clemency request. Without the latter, the former is insufficient to afford Constitutional standing. *See Hollingsworth v. Perry*, 570 U. S. 693, 700 (2013); and *Baker v. Carr*, 369 U.S. 186, 204 (1962). Rather, the ACLU must establish its own "injury in fact" and "cannot rest [its] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). Accordingly, the claim that "Executive clemency…is now Mr. Bowman's lone avenue for relief", ECF No. 34 at p. 1-2, has no bearing on the alleged injury to the ACLU in its news gathering capacity.[1]

Since at least April 2, 2024, when the Defendant's Memorandum of Law was filed in opposition to the ACLU's original motion, the ACLU has been aware that there are no restrictions on the publication of an inmate's speech obtained in a permissible manner, such as by written correspondence. *See* ECF No. 21 at p. 3 ("the Defendant does not prohibit the publication of the speech of inmates communicated through these permissible channels"); *see also id.* at p. 25

---

[1] This theme was repeatedly raised in the Defendant's prior submissions. *See, e.g.,* ECF No. 21 at p. 7 ("While these allegations [in the Plaintiff's Complaint] suggest that *someone* could potentially assert a colorable claim for relief, that *someone* is not the Plaintiff."). Notably, in the months since these arguments were presented, no effort has been made to add Bowman or any other inmate as a party to these proceedings.

2

(depicting photograph of an inmate's letter to the press published in The Post & Courier). The ACLU's failure to "receive" Mr. Bowman's speech via written correspondence and its failure to "publish" Bowman's speech is a "self-inflicted" harm which cannot give rise to standing. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 418 (2013); *see also Ins. Corp. of Ir. v. Compagnie Des Bauxites De Guinee*, 456 U.S. 694, 702 (1982) (It is fundamental that "no action of the parties can confer subject-matter jurisdiction upon a federal court."). Plaintiff apparently has made no effort to conduct a written interview of Mr. Bowman or, if it has done so, to publish his words. Instead, it has purposefully refrained from such reporting in order to create a sense of urgency now that South Carolina's Supreme Court has ruled on the constitutionality of several methods of execution.

## II.    FAILURE TO STATE A CLAIM

According to the ACLU's current motion, Mr. Bowman needs its assistance to effectively "further…his clemency petition". ECF No. 34 at p. 2. This assertion once again attempts to use the interests of Mr. Bowman, a non-party, as a crutch to bolster the Plaintiff's own claims. The proper focus, however, must be confined to the question of whether the Defendant's policy violates the First Amendment protections applicable to the Plaintiff's "news gathering" activities. *See Branzburg v. Hayes*, 408 U.S. 665, 707 (1972).

As noted above, since the Defendant's policy does not prohibit the publication of a written interview with Mr. Bowman, the public has only failed to hear his story because the ACLU refuses to interview him in writing. Having stubbornly rejected the written interview option, the ACLU insists that only its preferred method for news gathering, "multimedia storytelling", is sufficient. In other words, Plaintiff maintains that written communications from

3

Mr. Bowman are a constitutionally inadequate substitute for a "face-to-face" (whether live or remote) interview of the same prisoner together with audio or video recordings thereof.

Whatever the journalistic merits of face-to-face interviews might be, binding Supreme Court precedent confirms that they are not relevant to the First Amendment analysis. In *Saxbe v. Wash. Post Co.*, 417 U.S. 843 (1974), Justice Powell argued unsuccessfully to his colleagues on the Court that:

> [only in such a face-to-face] discussion can a reporter put a question to an inmate and respond to his answer with an immediate follow-up question. Only in an interview can the reporter pursue a particular line of inquiry to a satisfactory resolution or confront an inmate with discrepancies or apparent inconsistencies in his story. Without a personal interview a reporter is often at a loss to determine the honesty of his informant or the accuracy of the information received.

*Id.* at 854 (Powell, J., dissenting). Justice Powell's colleagues were unpersuaded, and the Supreme Court rejected the claims by media groups that face-to-face or in-person interviews were constitutionally mandated. Accordingly, the Court upheld "the Federal Bureau of Prisons… regulation [which] prohibited any personal interviews between newsmen and individually designated federal prison inmates." *Id.* at 844.[2]

In *Houchins v. KQED, Inc.*, 438 U.S. 1 (1978), the media Plaintiffs claimed that the First Amendment included a right to "interview inmates and make sound recordings, films, and photographs for publication and broadcasting by newspapers, radio, and television." *Id.* at 3. The media plaintiffs "further asserted that television coverage of the conditions in the cells and facilities was the *most effective way* of informing the public of prison conditions." *Id.* at 4 (emphasis added). In rejecting these arguments, the Supreme Court concluded that the available news gathering

---

[2] The *Saxbe* majority also felt no need to address the dissent's contention that "the prevalence of functional illiteracy among the inmate population poses a serious difficulty; many prisoners are simply incapable of communicating effectively in writing." *Saxbe*, 417 U.S. at 854-855 (Powell, J., dissenting).

options - *i.e.*, receipt of letters from inmates and interviews with nonincarcerated subjects - were constitutionally sufficient. *See id.* at 15-16. Based on *Saxbe* and *Houchins*, it is clear that the Department's current interview policy satisfies constitutional muster.

### III.     INJUNCTIVE RELIEF IS INAPPROPRIATE

"A preliminary injunction is an extraordinary remedy never awarded as of right." *See Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). As to the necessary prerequisites identified in *Winter*:

> The Court cannot issue a preliminary injunction absent a "clear showing" that all four requirements are satisfied. *Leaders of a Beautiful Struggle v. Balt. Police Dep't*, 979 F.3d 219, 226 (4th Cir. 2020), rev'd on other grounds, 2 F.4th 330 (4th Cir. 2021); accord *Pashby v. Delia*, 709 F.3d 307, 320 (4th Cir. 2013). The plaintiff "bears the burden of establishing that each of these factors supports granting the injunction." *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). Thus, a court need not address all four *Winter* factors if one or more of those factors is not satisfied. *Henderson ex rel. NLRB v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018).
>
> In addition, the movant must show more than a "grave or serious question for litigation"; instead, the moving party bears the "heavy burden" of making a "clear showing" that he satisfies all four factors. *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 345-47 (4th Cir. 2009); *see also Int'l Bhd. of Teamsters v. Airgas, Inc.*, 239 F. Supp. 3d 906, 912 (D. Md. 2017).

*Roswell v. Mayor*, 671 F. Supp. 3d 607, 616 (D.Md. 2023), aff'd 2023 U.S. App. LEXIS 33595 (4th Cir. December 19, 2023) (per curiam).

As detailed in Section II above, the Plaintiff would have to overcome fifty years of established precedent to succeed on the merits. Thus, it cannot, *a fortiori*, make a "clear showing" of "likelihood of success on the merits" at this stage of the litigation. Further, "it [is] unnecessary to address all four [*Winter*] factors when one or more [has] not been satisfied", *Henderson ex rel. NLRB v. Bluefield Hosp. Co., LLC*, 902 F.3d 432, 439 (4th Cir. 2018), citing *Winter*, 555 U.S. at 23-24.

**CONCLUSION**

For the reasons set forth in its initial briefing and above, this case should be dismissed pursuant to FRCP Rules 12(b)(1) and 12(b)(6), and Plaintiff's request for injunctive relief should be denied.

Respectfully submitted,

WOMBLE BOND DICKINSON (US) LLP

By: /s/ Kevin A. Hall
Federal Bar No. 5375
kevin.hall@wbd-us.com
M. Todd Carroll
Federal Bar No. 9742
todd.carroll@wbd-us.com
1221 Main Street, Suite 1600
Columbia, South Carolina 29201
803.454.6504

David M. Collins
Federal Bar No. 223
david.collins@wbd-us.com
5 Exchange Street
Charleston, South Carolina 29401
843.722.3400

*Attorneys for Defendant Bryan Stirling, in his official capacity as Executive Director of the South Carolina Department of Corrections*

August 23, 2024