IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| American Civil Liberties Union Foundation of South Carolina, </br></br> Plaintiff, </br></br> v. </br></br> Bryan Stirling, *in his official capacity as Executive Director of the South Carolina Department of Corrections*, </br></br> Defendant. | Case No. 3:24-cv-00906-JDA </br></br> **OPINION AND ORDER** |

      This matter is before the Court on Plaintiff's motion for preliminary injunction [Doc. 4], Defendant's motion to dismiss [Doc. 20], and Plaintiff's motion for expedited consideration of preliminary injunction [Doc. 34]. On February 23, 2024, Plaintiff filed a motion for preliminary injunction. [Doc. 4.] On April 2, 2024, Defendant filed a response to Plaintiff's motion for preliminary injunction and a motion to dismiss Plaintiff's Complaint for lack of standing and failure to state a claim. [Docs. 20; 21.] Plaintiff filed a reply in support of its motion for preliminary injunction and a response to Defendant's motion to dismiss on April 16, 2024. [Docs. 26; 27.] Defendant filed a reply in support of his motion to dismiss on April 23, 2024. [Doc. 30.] On August 13, 2024, Plaintiff filed a motion for expedited consideration of preliminary injunction and notice of supplemental facts. [Doc. 34.] Defendant filed a response on August 23, 2024. [Doc. 35.] For the reasons below, the Court grants the motion to dismiss, denies the motion for preliminary injunction, and finds as moot the motion for expedited consideration.

## BACKGROUND

Defendant is the Agency Director of the South Carolina Department of Corrections ("SCDC"), who exercises final and ultimate authority over the construction and enforcement of all SCDC policies. [Doc. 1 ¶ 7.] Plaintiff is a nonprofit organization whose mission is "to protect and advance civil rights and civil liberties in South Carolina through litigation, education, and advocacy." [*Id*. ¶ 6.]

In South Carolina, prisoner contact with members of the press is governed by SCDC Policy GA-02.01, "Employee and Inmate Relations with News Media, Legislators, and Others," which provides as follows:

> REQUESTS FOR INTERVIEWS WITH INMATES: Personal contact interviews with any SCDC inmate, untried county safekeeper, or death row inmate by anyone will be prohibited. (NOTE: This prohibition does not apply to internal or external law enforcement, Agency officials, internal and external auditors, or legal professionals who may need to interview inmates for purposes of an investigation or pending legal action or to researchers approved pursuant to SCDC Policy/ Procedure ADM-15.07, "Research Conducted Within the SCDC.")

[*Id*. ¶ 12; Doc. 4-3 at 5.] Additionally, according to Plaintiff, SCDC has a "pattern and practice of prohibiting incarcerated people from communicating with anyone who intends to publish prisoner speech, either in person, by video, or by telephone" (collectively with SCDC Policy GA-2.01, the "Policy"). [Doc. 1 ¶¶ 13–14.] However, prisoners are permitted to write letters to the press. [*Id*. ¶ 14.] According to the Complaint, Defendant has explained that the Policy is "rooted in victim's rights" and a belief that "victims should [not] have to see the person who harmed them or their family members on the evening news." [*Id*. ¶ 16 (internal quotation marks omitted).]

As an example of enforcement of the Policy, Plaintiff alleges that on August 8, 2023, SCDC learned that one of its prisoners—Richard (Alex) Murdaugh—had provided personal information to his attorney during a legal call, and his attorney recorded the call and later provided it to Fox Nation for inclusion in a docu-series. [*Id*. ¶¶ 18–19.] SCDC determined that Murdaugh and his attorney violated the Policy, and as a result, revoked Murdaugh's tablet and phone privileges for a period of time and sent a letter to the attorney advising that his actions were prohibited by the Policy and could jeopardize his phone communications with his client in the future. [*Id*. ¶¶ 20–21.]

Plaintiff seeks to record and publish interviews with two individuals in SCDC custody: Sofia Cano and Marion Bowman Jr. (the "Planned Activities").[1] [*Id*. ¶¶ 25–48.] Cano is a transgender woman whose experience with transgender healthcare at SCDC is the subject of another lawsuit in this Court and Plaintiff represents Cano in that case. [*Id*. ¶¶ 32–34.] Plaintiff alleges that SCDC has "no legitimate penological interest in preventing [Plaintiff] from publishing an article, letter, or podcast that shares the impact of SCDC's inhumane denial of treatment in Ms. Cano's own words." [*Id*. ¶ 39.] Bowman is currently held on South Carolina's death row, has exhausted his appeals and postconviction claims, and is preparing to petition for executive clemency. [*Id*. ¶ 40.] Plaintiff seeks to publish interviews with Bowman in podcast form "to increase political pressure in favor of clemency, to shed light on the impropriety of capital punishment, and to inform the public about the inhumane treatment endured by people incarcerated in

---

[1] Plaintiff does not specifically allege an intent to record and publish an interview with Cano, though this is generally stated in the Complaint. [Doc. 1 ¶ 39; *see id*. ¶¶ 3, 31.]

3

SCDC." [*Id*. ¶¶ 42–46.]  Plaintiff alleges it has access to both inmates via telephone and in-person visitation, and also has access to Bowman through video calls.  [*Id*. ¶¶ 35, 44.]

In its Complaint, Plaintiff alleges two causes of action under 42 U.S.C. § 1983—a facial and an as-applied challenge to the Policy under the First Amendment—and requests that the Court declare the Policy unconstitutional and enjoin enforcement of the Policy in general and against Plaintiff for engaging in the Planned Activities.  [*Id*. ¶¶ 49–65.]

## APPLICABLE LAW

**Rule 12(b)(1) Standard**

A challenge to standing "implicates this Court's subject matter jurisdiction and is governed by Rule 12(b)(1)."  *Crumbling v. Miyabi Murrells Inlet, LLC*, 192 F. Supp. 3d 640, 643 (D.S.C. 2016).  Article III limits a federal court's jurisdiction to cases and controversies, and "[o]ne element of the case-or-controversy requirement is that plaintiffs must establish that they have standing to sue."  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013) (internal quotation marks omitted).  To possess Article III standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).  Additionally, "[s]tanding is not dispensed in gross," and instead, "a plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought."  *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 734 (2008) (internal quotation marks and citation omitted).

"The party attempting to invoke federal jurisdiction bears the burden of establishing standing." *Miller v. Brown*, 462 F.3d 312, 316 (4th Cir. 2006). When ruling on a motion to dismiss for lack of standing, a court "must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party." *Warth v. Seldin*, 422 U.S. 490, 501 (1975). "Nevertheless, the party invoking the jurisdiction of the court must include the necessary factual allegations in the pleading, or else the case must be dismissed for lack of standing." *Bishop v. Bartlett*, 575 F.3d 419, 424 (4th Cir. 2009). "When a defendant raises standing as the basis for a motion under Rule 12(b)(1) . . . the district court may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (internal quotation marks omitted). "A federal court is powerless to create its own jurisdiction by embellishing otherwise deficient allegations of standing." *Whitmore v. Arkansas*, 495 U.S. 149, 155–56 (1990).

**Rule 12(b)(6) Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a claim should be dismissed if it fails to state a claim upon which relief can be granted. When considering a motion to dismiss, the court should "accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Lab'ys, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). However, the court "need not accept the legal conclusions drawn from the facts" nor "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *E. Shore Mkts., Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Further, for purposes of a Rule 12(b)(6) motion, a court may rely on only the complaint's allegations and those documents attached as

5

exhibits or incorporated by reference. *See Simons v. Montgomery Cnty. Police Officers*, 762 F.2d 30, 31–32 (4th Cir. 1985). If matters outside the pleadings are presented to and not excluded by the court, the motion is treated as one for summary judgment under Rule 56 of the Federal Rules of Civil Procedure. Fed. R. Civ. P. 12(d).

With respect to well pleaded allegations, the United States Supreme Court explained the interplay between Rule 8(a) and Rule 12(b)(6) in *Bell Atlantic Corp. v. Twombly*:

> Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

550 U.S. 544, 555 (2007) (footnote and citations omitted); *see also* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004) ("[T]he pleading must contain something more . . . than a bare averment that the pleader wants compensation and is entitled to it or a statement of facts that merely creates a suspicion that the pleader might have a legally cognizable right of action.").

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a

6

defendant has acted unlawfully." *Id*. The plausibility standard reflects the threshold requirement of Rule 8(a)(2)—the pleader must plead sufficient facts to show he is entitled to relief, not merely facts consistent with the defendant's liability. *Twombly*, 550 U.S. at 557; *see also Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Accordingly, the plausibility standard requires a plaintiff to articulate facts that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible the plaintiff is entitled to relief. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009).

## **DISCUSSION**

Defendant argues that Plaintiff's Complaint should be dismissed for lack of subject matter jurisdiction because the Complaint fails to plead that Plaintiff suffered a particularized, traceable, and redressable injury such that it has standing and, even if it has standing, the Complaint should be dismissed for failure to state a claim upon which relief can be granted. [Doc. 20-1.] The Court first addresses Defendant's arguments regarding standing. *See Garey v. James S. Farrin, P.C.,* 35 F.4th 917, 921 (4th Cir. 2022) ("Because standing is a threshold jurisdictional question, we address it first." (cleaned up)).

**Standing**

Defendant argues that Plaintiff lacks standing because the Complaint fails to plead an injury in fact, fails to show that its alleged injury is traceable to Defendant, and fails to

7

show that it is likely its injury will be redressed by a favorable decision.[2]  [Doc. 20-1 at 6–14.]

### *Injury in Fact*

To establish the first element of standing, a plaintiff must show that it suffered an injury in fact that is "concrete and particularized" and "actual or imminent."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted).  The Supreme Court of the United States has explained that standing requirements are somewhat relaxed in First Amendment cases:

> Even where a First Amendment challenge could be brought by one actually engaged in protected activity, there is a possibility that, rather than risk punishment for his conduct in challenging the statute, he will refrain from engaging further in the protected activity.  Society as a whole then would be the loser.  Thus, when there is a danger of chilling free speech, the concern that constitutional adjudication be avoided whenever possible may be outweighed by society's interest in having the statute challenged.

*Sec'y of State of Md. v. Joseph H. Munson Co.*, 467 U.S. 947, 956 (1984).  The leniency of First Amendment standing manifests itself most commonly in the injury in fact analysis.  *Cooksey v. Futrell*, 721 F.3d 226, 235 (4th Cir. 2013).

---

[2] Defendant also briefly argues that Plaintiff attempts to rest its claim to relief on the legal rights or interests of third parties, which is prohibited in a standing analysis.  [Doc. 20-1 at 7–9.]  His basis for this assertion is the Complaint's "repeated[] reference . . . to alleged harm (or potential harm) to inmates or other third parties."  [*Id*. at 7.]  In response, Plaintiff contends that "[Defendant]'s argument confuses standing, which is established by the challenged policy's application to [Plaintiff]'s planned activities . . . with the merits of [Plaintiff]'s overbreadth challenge, which requires an analysis of the rights of others," and claims that the Complaint's references to third parties are for the purpose of establishing its overbreadth claim.  [Doc. 26 at 15–16 (emphasis omitted).]  The Court agrees with Plaintiff and does not find that Plaintiff lacks standing on this basis.

Defendant first argues that Plaintiff cannot show that it has suffered an injury in fact that is concrete and particularized.  [Doc. 20-1 at 10–12.]  Specifically, Defendant argues that Plaintiff's alleged injury is not particularized because the Policy's restrictions apply equally to all members of the public, and that it is not concrete because Plaintiff has not actually been prevented from having discussions with inmates nor has it alleged that it has been threatened with consequences for publishing the inmates' speech.  [*Id*. at 10–11.]  Defendant further argues that Plaintiff's "self censorship" does not constitute an injury in fact, and that its alleged injury is not "objectively reasonable" under First Amendment jurisprudence.  [*Id*. at 11–12 (internal quotation marks omitted).]

In response to Defendant's motion, Plaintiff argues that the Policy causes it a concrete, imminent, and particularized harm by chilling Plaintiff's ability to engage in the Planned Activities.  [Doc. 26 at 8–9.]  Plaintiff first notes that Defendant misconstrues the meaning of "particularized": "[A] particularized injury in one that affects the plaintiff in a personal and individual way. . . ..  [T]hat a law or policy applies to many people—or even *all* people—is no barrier to standing."  [*Id*. at 9 (cleaned up).]  Plaintiff next argues that its concrete injury lies not in its lack of access to its clients, but in the credible and imminent threat of enforcement in relation to its First Amendment-protected activities—namely, recording and publishing real-time interviews with its clients.  [*Id*. at 10–12.]  Finally, Plaintiff asserts that its decision to self-censor is objectively reasonable because "Plaintiff's planned activities . . . plainly trigger a credible threat of enforcement under [the Policy]" that affects Plaintiff's clients *and* the organization itself.  [*Id*. at 12–13.]

The Court concludes that Plaintiff has sufficiently alleged an injury in fact.  First, the Court agrees with Plaintiff that it does not need to allege that the injury is unique, only

9

that it "affect[s] the plaintiff in a personal and individual way," to show that it is particularized. *Spokeo,* 578 U.S. at 339 (internal quotation marks omitted). Plaintiff has done so here by alleging that the Policy prohibits Plaintiff from engaging in specific, planned, and protected First Amendment conduct, i.e., conducting, recording, and publishing interviews with two inmate clients. The Court also concludes that Plaintiff has alleged a concrete injury because its alleged injury is based on the credible threat of enforcement in regard to its First Amendment-protected Planned Activities. *See id.* at 340 ("A 'concrete injury' must be '*de facto*'; that is, it must actually exist. . . . When we have used the adjective 'concrete,' we have meant to convey the usually meaning of the term—'real,' and not 'abstract.'") (internal quotation marks omitted).[3]

Finally, as noted, "standing requirements are somewhat relaxed in First Amendment cases," as courts have recognized a special interest in allowing a statute to be challenged when it chills free speech. *Cooksey*, 721 F.3d at 235. Consequently, a plaintiff may bring a pre-enforcement challenge to a statute or regulation by showing that it results in self-censorship. *Id*. Importantly however, the claimed chilling effect cannot be based on "[s]ubjective or speculative accounts." *Benham v. City of Charlotte*, 635 F.3d 129, 135 (4th Cir. 2011) (internal quotation marks omitted). Instead, "[a]ny chilling effect must be objectively reasonable," meaning "it is likely to deter a person of ordinary firmness from the exercise of First Amendment rights." *Id* (cleaned up).

---

[3] Though Defendant does not explicitly argue that Plaintiff's injury was not "actual or imminent," the Court notes that Plaintiff correctly contends it has sufficiently alleged an "imminent" injury that satisfies the requirements of Article III. *See Clemens v. ExecuPharm Inc.*, 48 F.4th 146, 152 (3d Cir. 2022) ("That 'actual or imminent' is disjunctive is critical: it indicates that a plaintiff need not wait until he or she has *actually* sustained the feared harm in order to seek judicial redress, but can file suit when the risk of harm becomes imminent.").

Here, Plaintiff has sufficiently shown that the Policy has a non-speculative and objectively reasonable chilling effect on its speech. On its face, the Policy prevents Plaintiff from recording and publishing real-time interviews with its clients, which would result in enforcement not only against Plaintiff's clients but against Plaintiff itself. [*See* Doc. 1 ¶¶ 3–4; *see also* Doc. 21 at 2–3 (acknowledging that recording and publishing "personal contact interviews" with inmates is disallowed under the Policy).] Moreover, the credible threat of punishment for violating the Policy is corroborated by Plaintiff's allegations that an attorney has already received a threatening letter (and his client has received punishment) for engaging in similar conduct, and the fact that Defendant has not "disavowed enforcement" if Plaintiff engages in similar conduct. [*See* Doc. 1 ¶¶ 18–21]; *Kenny v. Wilson*, 885 F.3d 280, 284 (4th Cir. 2018) (noting that "past enforcement against the same conduct is good evidence that the threat of enforcement is not chimerical," and the "threat of prosecution is especially credible when defendants have not disavowed enforcement if plaintiffs engage in similar conduct in the future" (internal quotation marks omitted)). At this stage, the Court concludes that Plaintiff's allegations are sufficient to show that Plaintiff's self-censorship is an objectively reasonable response to a credible threat of enforcement, and that it has therefore established an injury in fact.

### Traceability and Redressability

Defendant further argues that Plaintiff cannot show the other two elements of the standing inquiry, traceability and redressability, because "Plaintiff's avoidance of certain actions [is] based on speculation as to future harm to third parties" and because Plaintiff's representatives have already interviewed the inmates in question. [Doc. 20-1 at 13–14.] The Court finds these arguments unavailing. Traceability is satisfied where "a causal

11

connection between the injury and the conduct complained of . . . is fairly traceable, and not the result of the independent action of some third party not before the court." *Frank Krasner Enters., Ltd. v. Montgomery Cnty.,* 401 F.3d 230, 234 (4th Cir. 2005) (emphasis and internal quotation marks omitted). The redressability requirement is satisfied where there is "a non-speculative likelihood that the injury would be redressed by a favorable judicial decision." *Id*.

Here, the alleged injuries—chilling of speech—are caused directly by the Policy at issue that is enforced by Defendant. Additionally, a favorable decision on Plaintiff's behalf would mean that Defendant would be enjoined from enforcing the Policy and/or the Policy would be deemed unconstitutional. In that case, Plaintiff would find full redress, as it would be permitted to record and publish real-time interviews with its clients who are incarcerated. Thus, the Court concludes that Plaintiff has standing to challenge the Policy.

**Failure to State a Claim**

Defendant next argues that even if the Court concludes that Plaintiff has standing to bring this action, Plaintiff has failed to state a claim upon which relief may be granted under Rule 12(b)(6) of the Federal Rules of Civil Procedure. [Doc. 20-1 at 14–18.] Specifically, Defendant argues that Plaintiff has not pled a constitutional right of access to the information it seeks to publish, and cites three Supreme Court cases that he asserts "uphold the discretion of prison officials to approve or deny physical entry into [a] facility." [*Id*. at 14–15 (internal quotation marks omitted)]; *see Pell v. Procunier*, 417 U.S. 817 (1974); *Saxbe v. Wash. Post Co.*, 417 U.S. 843 (1974); *Houchins v. KQED, Inc.*, 438 US.

1 (1978). The Court agrees that Plaintiff has failed to state a claim upon which relief may be granted.

In *Pell*, the Supreme Court addressed a constitutional challenge to a California Department of Corrections policy that prohibited media interviews with specific inmates. 417 U.S. at 819. After being denied access to three specific inmates for purposes of an interview, three journalists and four inmates challenged the regulation. *Id*. at 819–20. The Court rejected the journalist plaintiffs' argument that denial of face-to-face interviews was an "unconstitutional state interference with a free press" and held that "newsmen have no constitutional right of access to prisons or their inmates beyond that afforded the general public." *Id*. at 833–34.

In *Saxbe*, a companion case to *Pell*, a newspaper and one of its reporters challenged the constitutionality of a regulation that prohibited personal interviews between reporters and individually designated federal prison inmates. 417 U.S. at 844. The Supreme Court held that any balancing of the First Amendment interests of the press with the penological interests of the policy was unnecessary, concluding that "[t]he proposition that the Constitution imposes upon government the affirmative duty to make available to journalists sources of information not available to members of the public generally . . . finds no support in the words of the Constitution or in any decision of this court." *Id*. at 849–50 (internal quotation marks omitted) (second alteration in original).

Finally, in *Houchins*, media plaintiffs alleged that the First Amendment protected their right to interview inmates and make sound recordings, films, and photographs for publication and broadcasting by newspapers, radio, and television, asserting that television coverage was the most effective way of informing the public of prison

13

conditions. 438 U.S. at 3–4. The Court rejected this claim, holding that "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control," and that "the media have no special right of access to the [prison] different from or greater than that accorded the public generally." *Id*. at 15–16 (plurality opinion); *id*. at 16 (Stewart, J., concurring in the judgment) ("The First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by the government, nor do they guarantee the press any basic right of access superior to that of the public generally.").

Based on these holdings, Defendant contends that "*Pell*, *Saxbe*, and *Houchins* mandate the dismissal of the Plaintiff's claims." [Doc. 20-1 at 18.] Defendant further argues that because, like in *Pell* and *Houchins*, alternative avenues of communication, such as written interviews, are available to Plaintiff, there is no impermissible restriction on its news gathering as a matter of law. [*Id*. at 17.]

In response, Plaintiff attempts to distinguish *Pell*, *Saxbe*, and *Houchins*, arguing that their holdings are relevant only to the press's First Amendment right to access inmates and prison facilities, not to counsel's First Amendment right to record and publish their incarcerated clients' speech. [Doc. 26 at 19, 20–24.] Plaintiff maintains that it has already obtained *access* to its clients who are incarcerated at SCDC—including Cano and Bowman—but contends that the Policy unconstitutionally restricts it from recording and publishing interviews with these individuals. [*Id*.] Plaintiff quotes *ACLU of Illinois v. Alvarez*, 679 F.3d 583 (7th Cir. 2012), for the proposition that "[t]he act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee

14

of speech and press rights as a corollary of the right to disseminate the resulting recording."[4]  [Doc. 26 at 19 (internal quotation marks omitted) (alteration in original).]

After reviewing the parties' arguments, the Policy at issue, and the relevant case law, the Court concludes that Plaintiff has failed to state a claim because it has no First Amendment right to engage in the Planned Activities.  The Court disagrees with Plaintiff's argument that its claims do not depend upon the existence of a right of access to Cano and Bowman because it already has some access to them by virtue of the fact that they are Plaintiff's clients.  In the Court's view, the access Plaintiff already has is a red herring here because mere access to meet with its clients and discuss their legal cases is not what Plaintiff seeks in this case.  Rather, it is apparent from the Complaint that what Plaintiff seeks is a different type of access:  access to SCDC inmates, including its clients, for the purpose of recording interviews for publishing.[5]

Though this Court agrees with the *Alvarez* court that there is a general First Amendment right to audio record speech in public, *see Alvarez*, 679 F.3d at 595 ("[T]he

---

[4] In *Alvarez*, the ACLU of Illinois claimed a First Amendment right to record public officers in public view, challenging an eavesdropping statute that made it a felony to audio record "'all or any part of any conversation' unless all parties gave their consent."  *Alvarez*, 679 F.3d at 586.  In analyzing the plaintiff's motion for preliminary injunction, the court stated that "[a]udio and audiovisual recording are media of expression . . . [that] are included within the free speech and free press guaranty of the First and Fourteenth Amendments."  *Id*. at 595. (internal quotation marks omitted).  The court further noted, "[t]he right to publish or broadcast an audio or audiovisual recording would be insecure, or largely ineffective, if the antecedent act of *making* the recording is wholly unprotected."  *Id*.

[5] It is unclear whether Plaintiff specifically challenges the Policy's restriction on its communication director Paul Bowers' access to conduct and record media interviews or on its attorneys' access to record the interviews they conduct with their clients. [*See generally* Doc. 1 ¶¶ 25–31, 44, 46.]  However, this distinction is of no consequence here, as the Policy's prohibition on personal contact interviews applies equally to media representatives and attorneys intending to record and publish prisoner speech.

First Amendment limits the extent to which [a state] may restrict audio and audiovisual recording of utterances that occur in public"), that is not the right Plaintiff seeks to exercise here.  Instead, it is clear that the relief Plaintiff actually seeks in its Complaint is *access* to create such recordings for the purpose of later publication.  Plaintiff's right to record and publish the speech is secondary—Plaintiff first needs access to information that is within the government's control.  *Pell*, *Saxbe*, and *Houchins* make clear that not even the media have a special right under the First Amendment to such access.  *See Pell*, 417 U.S. at 834 ("The Constitution does not . . . require government to accord the press special access to information not shared by members of the public generally."); *Houchins*, 438 U.S. at 16 (Stewart, J., concurring in the judgment) ("The Constitution does no more than assure the public and the press equal access once government has opened its doors.").  Because Plaintiff has no constitutional entitlement to the access it demands, Plaintiff fails to state a claim for which relief may be granted, and Plaintiff's claims are dismissed.[6]

---

[6] In addition to its as-applied challenge, Plaintiff also asserts a facial challenge, alleging that the Policy is unconstitutional on its face because it is overbroad and "categorically suppress[es] all prisoner speech in the media."  [Doc. 1 ¶¶ 49–60.]  In its response to Defendant's motion to dismiss, Plaintiff's only argument in support of its facial challenge is that the Policy is overbroad because it is not justified by "security, order, and rehabilitation" under *Procunier v. Martinez*, 416 U.S. 396, 413–14 (1974), and even if it were predicated on an interest in security, order, and rehabilitation, it lacks the "close fit" required by *Martinez*.  [Doc. 26 at 17–19.]  However, the Court concludes that it need not reach the issues of which level of scrutiny applies and whether the Policy passes such scrutiny, because the holdings of *Pell*, *Saxbe*, and *Houchins* also govern Plaintiff's facial challenge.  Because there is no general First Amendment right of access to inmates, Plaintiff cannot plead that the Policy violates the First Amendment on its face.  *See Smith v. Plati*, 258 F.3d 1167, 1178 (10th Cir. 2001) (concluding that the "well-settled" principle that "there is no general First Amendment right of access to all sources of information within governmental control . . . applies equally to both public and press"); *Voter Reference Found., LLC v. Torrez*, No. CIV 22-0222 JB/KK, 2024 WL 1347204, at *147 (D.N.M. Mar. 29, 2024) (granting summary judgment to defendants on plaintiff's

**CONCLUSION**

Wherefore, based upon the foregoing, Defendant's motion to dismiss [Doc. 20] is GRANTED, Plaintiff's motion for preliminary injunction [Doc. 4] is DENIED, and Plaintiff's motion to expedite consideration of preliminary injunction [Doc. 34] is FOUND AS MOOT.

IT IS SO ORDERED.

s/ Jacquelyn D. Austin
United States District Judge

August 30, 2024
Columbia, South Carolina

---

overbreadth challenge because there was no general right to access the government information at issue, and therefore the policy was "not overbroad because it [did] not unconstitutionally proscribe any protected speech"). As a result, Plaintiff's facial challenge also fails to state a claim upon which relief may be granted.

17