PUBLISHED

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-1882

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTH CAROLINA,

        Plaintiff – Appellant,

   v.

BRYAN STIRLING, in his official capacity as Executive Director of the South Carolina Department of Corrections,

        Defendant – Appellee.

------------------------------

LATINOJUSTICE PRLDEF,

        Amicus Supporting Appellant.

Appeal from the United States District Court for the District of South Carolina, at Columbia. Jacquelyn Denise Austin, District Judge. (3:24-cv-00906-JDA)

Argued: November 12, 2024                    Decided: December 13, 2024

Before NIEMEYER, AGEE, and RUSHING, Circuit Judges.

Affirmed by published opinion. Judge Rushing wrote the opinion, in which Judge Niemeyer and Judge Agee joined.

**ARGUED:** David Allen Chaney, Jr., ACLU OF SOUTH CAROLINA, Columbia, South Carolina, for Appellant. Kevin Alan Hall, WOMBLE BOND DICKINSON (US) LLP, Columbia, South Carolina, for Appellee. **ON BRIEF:** David Fathi, Washington, D.C., Corene Kendrick, ACLU NATIONAL PRISON PROJECT, San Francisco, California; Emerson Sykes, ACLU, New York, New York, for Appellant. M. Todd Carroll, Columbia, South Carolina, David Collins, WOMBLE BOND DICKINSON (US) LLP, Charleston, South Carolina, for Appellee. Lourdes Rosado, Andrew Case, Karen Muñoz Treviño, Meena Roldán Oberdick, LATINOJUSTICE PRLDEF, New York, New York, for Amicus LatinoJustice PRLDEF.

RUSHING, Circuit Judge:

Plaintiff American Civil Liberties Union Foundation of South Carolina (ACLU-SC) challenges the inmate interview policy of the South Carolina Department of Corrections (SCDC). ACLU-SC seeks to record and publish an interview with death row inmate Marion Bowman, Jr. The SCDC policy, however, forbids inmate interviews. ACLU-SC sued, alleging that SCDC's policy violates the First Amendment both facially and as applied to its planned interview with Bowman. The district court granted SCDC's motion to dismiss and denied ACLU-SC's request for an injunction, finding that ACLU-SC has no First Amendment right to access prison inmates to conduct interviews for publication. After carefully considering this expedited appeal, we affirm.

I.

A.

ACLU-SC is a nonprofit organization whose mission is to "protect and advance civil rights and civil liberties in South Carolina through litigation, education, and advocacy." J.A. 7. As part of these efforts, ACLU-SC attorneys represent two inmates incarcerated by SCDC, Bowman and Sofia Cano.[1] ACLU-SC seeks to record interviews with both inmates and publish those interviews in a series of audio podcasts as well as written pieces. "The interviews would be conducted by ACLU-SC Communications Director Paul Bowers."

---

[1] ACLU-SC represents Cano, a transgender person, in a lawsuit "challenging SCDC's denial of care under the Eighth Amendment and under Title II of the Americans with Disabilities Act." J.A. 12. ACLU-SC does not specify the subject of its representation of Bowman but notes that Bowman's capital counsel are different attorneys not affiliated with ACLU-SC. On appeal, ACLU-SC has focused on its desire to interview Bowman, so we do the same, but our decision applies to an interview with Cano as well.

Opening Br. 9. Bowers is a journalist and "is responsible for the organization's multimedia advocacy and storytelling," which includes writing "press releases, blogs, and news articles," conducting and publishing interviews, and "recording a podcast." J.A. 10–11. "When Bowers interviews individuals that ACLU-SC represents in an attorney-client capacity, he does not give legal advice, and ACLU-SC does not claim attorney-client privilege or other protections that attach to attorney-client communications." J.A. 11.

ACLU-SC's goal in publishing an interview with Bowman is "to increase political pressure in favor of clemency, to shed light on the impropriety of capital punishment, and to inform the public about the inhumane treatment endured by people incarcerated at SCDC." J.A. 13. Bowman was sentenced to death in 2002. He has "exhausted his appeals and postconviction claims and is now preparing to petition for executive clemency."[2] J.A. 12. According to ACLU-SC, a "story *about*" Bowman "is no substitute for the public hearing [his] own voice." J.A. 13.

B.

SCDC maintains a set of written policies concerning requests for information about the State's prisons, including its employees and inmates, and tours of its facilities. *See* GA-02.01, *Employee and Inmate Relations with News Media, State and Federal Legislators, and Others*. Generally speaking, the "Director's Office [is] responsible for coordinating all requests for information made by any news media representative(s)." GA-

---

[2] We granted ACLU-SC's motion to expedite this appeal, which represented that Bowman's execution was imminent. After oral argument, the Supreme Court of South Carolina issued an order holding all pending execution notices in abeyance until January 3, 2025.

4

02.01-1.1. The policies limit tours and disclosure of information to that which would not "endanger or jeopardize any internal or external investigative efforts," "jeopardize the integrity of the institution/Agency," or raise "legitimate concerns for safety and security." GA-02.01-1.2.2, -4.6, -6.2.

> The policy at issue here is GA-02.01-8. It states:
>
> REQUESTS FOR INTERVIEWS WITH INMATES: Personal contact interviews with any SCDC inmate, untried county safekeeper, or death row inmate by anyone will be prohibited. (NOTE: This prohibition does not apply to internal or external law enforcement, Agency officials, internal and external auditors, or legal professionals who may need to interview inmates for purposes of an investigation or pending legal action or to researchers approved pursuant to SCDC Policy/ Procedure ADM-15.07, "Research Conducted Within the SCDC.")

GA-02.01-8. SCDC has interpreted "personal contact interviews" to include interviews conducted by telephone but not those accomplished by exchanging letters. SCDC also interprets the policy's prohibition on personal contact interviews to implicitly prohibit recording the forbidden interviews by audio or visual means. ACLU-SC alleges that SCDC enforced this policy in 2023 by revoking an inmate's phone and tablet privileges and sending his attorney a warning letter after the attorney recorded portions of a phone call with the inmate and gave the recording to a media outlet for publication in a television documentary.

ACLU-SC challenged the interview policy by suing SCDC Director Bryan Stirling in his official capacity under 42 U.S.C. § 1983. In its complaint, ACLU-SC alleged that SCDC's policy violates its "First Amendment right to receive and publish speech by incarcerated people." J.A. 15. ACLU-SC asked the district court to find the policy

5

unconstitutional both facially and as applied to ACLU-SC's planned activities. It also sought a preliminary injunction against enforcement of the policy.

SCDC opposed the motion for a preliminary injunction and moved to dismiss the complaint. SCDC defended the interview policy as necessary to avoid "disruption to the orderly operation of prisons," a "drain on prison staffing," a "security risk" posed by communicating "coded messages to criminal associates," a "risk of institutional violence should a rival group or gang take offense" to publicized statements, a "potential for encouraging violence through incendiary speech," "lack of sensitivity for any outside crime victims," the "potential exposure of sensitive information" about "security procedures and planned activities," the "risk of impact on other ongoing litigation," a "detrimental impact on rehabilitation efforts," and the "potential for an inmate to develop celebrity status that contributes to management and control problems within the inmate population." J.A. 134.

The district court dismissed ACLU-SC's complaint for failure to state a claim, *see* Fed. R. Civ. P. 12(b)(6), and accordingly denied its motion for a preliminary injunction. After reviewing Supreme Court precedents rejecting a claimed right to access and interview inmates, the district court concluded that ACLU-SC "has no First Amendment right" to record and publish interviews with Bowman and Cano. *ACLU Found. of S.C. v. Stirling*, --- F. Supp. 3d ---, 2024 WL 4008537, at *7 (D.S.C. Aug. 30, 2024). The court rebuffed ACLU-SC's efforts to distinguish those precedents on the ground that it already has some access to Bowman and Cano as its clients, reasoning that "it is apparent from the Complaint that [ACLU-SC] seeks . . . a different type of access . . . for the purpose of recording interviews for publishing." *Id.* "Because there is no general First Amendment

6

right of access to inmates," the district court likewise rejected ACLU-SC's facial challenge to the policy. *Id.* at *8 n.6.

ACLU-SC timely appealed, and we have jurisdiction under 28 U.S.C. § 1291.

II.

As it did in the district court, ACLU-SC contends that SCDC's interview policy violates its First Amendment right "to receive information from willing [inmates] at SCDC," "to record" its interviews with those inmates, and "to publish" those interviews. Opening Br. 14. We observe at the outset that ACLU-SC does not bring any Sixth Amendment challenge to the interview policy. It does not allege that SCDC's policy hinders Bowman's right to have counsel advocate on his behalf in any forum. It does not contend that the policy in any way impedes its ability to provide legal assistance to Bowman. Nor does ACLU-SC argue that its role as Bowman's counsel gives it unique rights—relative to the general public—under the First or Sixth Amendments. Instead, ACLU-SC's claims are rooted exclusively in the First Amendment.

In bringing a First Amendment challenge, ACLU-SC bears the initial burden to "demonstrate that the First Amendment even applies." *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293 n.5 (1984). If the First Amendment does not apply, we "need go no further." *Cornelius v. NAACP Legal Def. & Educ. Fund*, 473 U.S. 788, 797 (1985). We review de novo the district court's decision dismissing the complaint on this basis, *see Fusaro v. Cogan*, 930 F.3d 241, 247–248 (4th Cir. 2019), and we address ACLU-SC's as-applied challenge first.

7

A.

We begin with the same trio of Supreme Court precedents on which the district court relied. In the first case, *Pell v. Procunier*, the Supreme Court held that "newsmen have no constitutional right of access to prisons or their inmates beyond that afforded the general public." 417 U.S. 817, 833–834 (1974). In *Pell*, journalists challenged a California prison policy stating that "'[p]ress and other media interviews with specific individual inmates will not be permitted.'"[3] *Id.* at 819. The journalists claimed a First Amendment right "to interview any inmate who is willing to speak with them, in the absence of an individualized determination that the particular interview" might endanger prison security or "another substantial interest served by the corrections system." *Id.* at 829. The Court rejected that argument. Reasoning from the principle that "'the First Amendment does not guarantee the press a constitutional right of special access to information not available to the public generally,'" the Court concluded that the Constitution imposes no duty upon government "to make available to journalists sources of information not available to members of the [general] public," including inmates in government custody. *Id.* at 833–835 (quoting *Branzburg v. Hayes*, 408 U.S. 665, 684–685 (1972)).

---

[3] Although California prison officials had previously provided journalists "virtually free access to interview any individual inmate," officials adopted this more restrictive policy after finding such unfettered access "resulted in press attention being concentrated on a relatively small number of inmates who, as a result, became virtual 'public figures' within the prison society and gained a disproportionate degree of notoriety and influence among their fellow inmates." *Pell*, 417 U.S. at 831–832. Those inmates "often became the source of severe disciplinary problems" that "erod[ed] the institutions' ability to deal effectively with the inmates generally." *Id.* at 832.

8

The Supreme Court decided *Saxbe v. Washington Post Co.*, 417 U.S. 843 (1974), the same day as *Pell*. There, a newspaper and one of its reporters challenged a Federal Bureau of Prisons regulation stating that "'[p]ress representatives will not be permitted to interview individual inmates . . . even where the inmate requests or seeks an interview.'" *Id.* at 844 n.1. As the Court explained, this policy did "not place the press in any less advantageous position than the public generally," given the scope of the Bureau of Prisons visitation policy. *Id.* at 849; *see id.* (explaining that "nobody may enter the prison and designate an inmate whom he would like to visit, unless the prospective visitor is a lawyer, clergyman, relative, or friend of that inmate"). Because the interview policy did "'not deny the press access to sources of information available to members of the general public,'" it did not implicate any constitutional right of the newspaper or reporter. *Id.* at 850 (quoting *Pell*, 417 U.S. at 835). Accordingly, the Court explained, "it [was] unnecessary to engage in any delicate balancing of [the proffered] penal considerations against the legitimate demands of the First Amendment" to resolve the constitutional question. *Id.* at 849.

Four years later, in *Houchins v. KQED, Inc.*, the Supreme Court rejected a claimed "constitutional right of access to a county jail . . . to interview inmates and make sound recordings, films, and photographs for publication." 438 U.S. 1, 3 (1978) (plurality opinion). In *Houchins*, a broadcasting company "requested permission to inspect and take pictures within" a California jail in aid of reporting on jail conditions and inmate health. *Id.* The broadcasting company urged that prison conditions were a matter of public importance and that "television coverage of the conditions in the cells and facilities was the most effective way of informing the public of prison conditions." *Id.* at 4. But the

9

Supreme Court was unconvinced. Reiterating the principles of *Pell* and *Saxbe*, the Court held that "[n]either the First Amendment nor the Fourteenth Amendment mandates a right of access to government information or sources of information within the government's control." *Id.* at 15; *see also id.* at 16 (Stewart, J., concurring in the judgment) (agreeing with the plurality that "[t]he First and Fourteenth Amendments do not guarantee the public a right of access to information generated or controlled by government, nor do they guarantee the press any basic right of access superior to that of the public generally"). Accordingly, "until the political branches decree otherwise, as they are free to do, the media have no special right of access to the [jail] different from or greater than that accorded the public generally." *Id.* at 16 (plurality opinion).

These controlling precedents require us to reject ACLU-SC's claimed First Amendment right to interview SCDC inmates and record those interviews for publication. Like the plaintiffs in *Pell*, *Saxbe*, and *Houchins*, ACLU-SC seeks permission for a journalist to interview prison inmates and make recordings for publication. And like the policies in *Pell*, *Saxbe*, and *Houchins*, SCDC's policy forbidding interviews "does not place the press in any less advantageous position than the public generally." *Saxbe*, 417 U.S. at 849. The policy prohibits personal contact interviews "by anyone," with narrow exceptions that ACLU-SC doesn't challenge. GA-02.01-8. Whether an interview is to be conducted in person or over the phone, SCDC's policy applies equally to the media and the general public. Indeed, ACLU-SC does not dispute that Bowman is unavailable "to members of the public generally." *Pell*, 417 U.S. at 834. Because the Constitution does

10

not "mandate[] a right of access to . . . sources of information within the government's control," ACLU-SC's First Amendment claim fails. *Houchins*, 438 U.S. at 15.

ACLU-SC objects that these precedents are distinguishable because it already has *access* to Bowman. As an initial matter, ACLU-SC's allegations betray its attempt to reframe the issue. It "alleges that, as retained counsel to Mr. Bowman," individuals from ACLU-SC are "permitted access to visit with and interview" him. Reply Br. 7. But as ACLU-SC's allegations necessarily imply, the attorney exception to the interview policy does not cover the interviews it wants to conduct and the access it requires for those interviews. *See* GA-02.01-8 ("This prohibition does not apply to . . . legal professionals who may need to interview inmates for purposes of an investigation or pending legal action . . . ."). ACLU-SC wants interview access for its journalist, Bowers, who apparently is not covered by any of the exceptions to the policy's prohibition on personal contact interviews. As the district court correctly observed, "it is apparent from the Complaint that what [ACLU-SC] seeks is a different type of access" than "the access [it] already has." *ACLU Found. of S.C.*, 2024 WL 4008537, at *7.

Further, the right of access the Supreme Court rejected in *Pell*, *Saxbe*, and *Houchins* was not mere physical entry to the prison. It encompassed a supposed constitutional obligation "to make available" government information and "sources of information" for interview, recording, and publication. *Pell*, 417 U.S. at 834; *see Houchins*, 438 U.S. at 3. SCDC makes inmates available to their attorneys to assist with their legal claims, but it does not make inmates available for interviews with members of the general public,

11

including journalists.[4]  The latter is the "access" ACLU-SC wants.  And that is what the Supreme Court concluded was not constitutionally required.  *See Saxbe*, 417 U.S. 850; *Houchins*, 438 U.S. at 15.

Instead of following *Pell*, *Saxbe*, and *Houchins*, ACLU-SC would have us evaluate the interview policy under the standard articulated in *Procunier v. Martinez*, 416 U.S. 396 (1974), for "regulations concerning outgoing correspondence." *Thornburgh v. Abbott*, 490 U.S. 401, 413 (1989) (limiting *Martinez* to that context).  That was the position of the dissenting Justices in *Saxbe*, who analyzed at length the benefits and burdens of the challenged interview policy using the *Martinez* standard.  *See Saxbe*, 417 U.S. at 864–870 (Powell, J., dissenting).  But the majority disagreed with that approach, finding it "unnecessary to engage in any delicate balancing of such penal considerations against the legitimate demands of the First Amendment" because the case was "controlled by the holding in" *Pell* that "'[n]ewsmen have no constitutional right of access to prisons or their inmates beyond that afforded the general public.'" *Saxbe*, 417 U.S. at 849–850 (majority opinion) (quoting *Pell*, 417 U.S. at 834).  Taking our direction from the *Saxbe* majority, we must reject the invitation to apply a balancing test here—whether that of *Martinez* or *Turner v. Safley*, 482 U.S. 78 (1987)[5]—when no First Amendment right is at stake.

---

[4] ACLU-SC identifies no factual allegations to support its argument that SCDC's policy restrains it from publishing an interview it lawfully obtained.  An interview conducted in violation of the interview policy is necessarily illicit.

[5] ACLU-SC argues the *Turner* standard in the alternative.

Because ACLU-SC has no First Amendment right to interview and record Bowman or other SCDC inmates, we affirm the district court's dismissal of its challenge to the interview policy as applied to those activities.

B.

We turn next to ACLU-SC's claim that the interview policy facially violates the First Amendment. A litigant mounting a facial challenge to a regulation ordinarily must establish that "no set of circumstances exists under which the [regulation] would be valid"—a standard a litigant cannot meet if the regulation constitutionally applies to his own conduct. *United States v. Salerno*, 481 U.S. 739, 745 (1987). The overbreadth doctrine of the First Amendment, however, instructs that a regulation is facially invalid if it "prohibits a substantial amount of protected speech relative to its plainly legitimate sweep." *United States v. Hansen*, 143 S. Ct. 1932, 1939 (2023) (internal quotation marks omitted). To justify facial invalidation on these terms, "a law's unconstitutional applications must be realistic, not fanciful, and their number must be substantially disproportionate to the statute's lawful sweep." *Id.* "In the absence of a lopsided ratio," the Supreme Court has instructed us to "handle unconstitutional applications . . . case-by-case." *Id.* at 1940.

ACLU-SC cannot establish that SCDC's interview policy prohibits "a substantial amount of protected speech relative to its plainly legitimate sweep." *Id.* at 1939 (internal quotation marks omitted). The policy prohibits "[p]ersonal contact interviews with any SCDC inmate . . . by anyone," with limited exceptions for law enforcement, auditors, researchers, SCDC officials, and legal professionals performing their professional duties.

13

GA-02.01-8. As *Pell*, *Saxbe*, and *Houchins* explain, there is no general First Amendment right of access to inmates. The constitutional applications of SCDC's generally applicable policy to the press and the general public, like to ACLU-SC's planned activities here, are therefore legion. On the other hand, the possibility of potentially unconstitutional applications of the policy is speculative. While ACLU-SC's arguments primarily focus on the press and public, it asserts without elaboration that the interview policy infringes the rights of prisoners. We are reluctant to hypothesize challenges an inmate might lodge against the SCDC policy, but we observe that the Supreme Court in *Pell* upheld the constitutionality of the interview ban in that case against a separate challenge brought by inmates. *See Pell*, 417 U.S. at 821–828. The Court noted in particular that "written correspondence" afforded the inmates an adequate alternative "channel for communication with persons outside the prison, including representatives of the news media." *Id.* at 824. ACLU-SC has alleged that SCDC inmates are also "permitted to write letters to the press" but cannot "publish their own writings." J.A. 8. Given the "wide legitimate reach" of the interview policy, we cannot "throw out . . . the good based on a speculative shot at the bad."[6] *Hansen*, 143 S. Ct. at 1948.

### III.

The district court correctly dismissed ACLU-SC's complaint for failure to state a claim because its journalists "have no constitutional right of access to prisons or their

---

[6] Of course, ACLU-SC's failure to state a claim of facial invalidity does not foreclose future constitutional challenges to the interview policy as applied to any individual, including SCDC inmates.

inmates beyond that afforded the general public." *Pell*, 417 U.S. 833–834.  And because ACLU-SC failed to allege a violation of its First Amendment rights, the district court did not abuse its discretion by denying ACLU-SC's motion for a preliminary injunction.  *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.